594 S.E.2d 159

In the Matter of Kenneth B. MASSEY, Respondent.

No. 25784.

Supreme Court of South Carolina.

Submitted Jan. 27, 2004.

Decided Feb. 23, 2004.

Rehearing Denied April 7, 2004.

440

Henry B. Richardson, Jr., Disciplinary Counsel, and Michael S. Pauley, both of Columbia, for the Office of Disciplinary Counsel.

Irby E. Walker, Jr., of Conway, for Respondent.

PER CURIAM:

In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RLDE, Rule 413, SCACR. In the agreement, respondent admits misconduct and consents to the imposition of any sanction set forth in Rule 7(b), RLDE. We accept the agreement and find a two year suspension from the practice of law is the appropriate sanction. The facts, as set forth in the agreement, are as follows.

## Facts

### I. Domestic Relations Matter

Respondent was retained to represent a client in a domestic relations matter. During his representation of the client, respondent's wife filed for divorce in North Carolina on several grounds, including adultery. During his representation of the client, and while his own divorce action was pending, respondent was observed leaving the client's residence at 3:00 a.m. on a night that the client had custody of her minor child.

In addition, concurrent with his representation of the client, respondent employed the client as a contract employee of his law firm. Respondent maintains he had an agreement with the client that she could work off her attorney's fee debt by

performing certain work related to respondent's law firm. However, respondent admits that the financial declaration he filed on the client's behalf in her domestic action did not reflect that the client derived any income as a result of working at respondent's office.

In response to inquiries by the Office of Disciplinary Counsel, respondent denied having an extra-marital affair with the client and, instead, affirmatively asserted the client was working on certain projects for him, including acting as a process server, and he was at the client's home several times at night. Respondent maintains that while his conduct created an appearance of impropriety, he did not engage in a sexual relationship with the client.

Respondent provided Disciplinary Counsel with affidavits from both the client and the client's mother indicating the client's mother was present at all times that he and the client were together and that no illicit relationship took place during the visits. However, respondent concedes that the private investigator's report indicated that the private investigator made multiple visits to the client's home and did not see anyone else in the home on those occasions, nor did he see any additional vehicles. Respondent provided the same affidavits of his client and the client's mother to the court handling his own divorce action. He denies the affidavits were false.

## II. *Fee Agreement Matter*

Respondent was retained, for a fee of $5,000, to represent another client in a domestic matter. The client also retained respondent to represent him on a traffic violation and in a criminal domestic violence (CDV) matter in which the client was the purported victim. Respondent entered into separate fee agreements with the client for representation in the traffic violation matter and the CDV matter, both of which set forth an hourly rate of $150.

Respondent provided the client with a billing statement wherein respondent billed the client for 52 telephone calls, 3 after-hours telephone calls, 6.5 hours of court and drive time, 10.25 hours for review, dictation and appointment time, and 6 hours for review of client correspondence, at the agreed upon rate of $150 per hour. Thereafter, respondent provided the

client with another billing statement in which he billed the client for 7.25 hours of professional services at the rate of $150 per hour. Respondent filed an affidavit, executed under oath and before a notary public, in family court in an effort to recover attorney's fees for his representation of the client in the domestic matter. The affidavit stated respondent's billing rate was $175 per hour. Respondent maintains the hourly rate set forth in the affidavit was an error and that he was unaware of the error at the time he executed and filed the affidavit. However, respondent admits that it is his obligation to submit accurate affidavits to the court concerning his billing rate and that his submission of the affidavit at issue violated the Rules of Professional Conduct.

## III. *Divorce Matter*

During the pendency of his divorce action, respondent made multiple complaints to the North Carolina Department of Social Services against both his former spouse and her parents. He also sent, or caused to be sent, certain facsimile transmissions to his former spouse's workplace. Respondent admits that he utilized his law firm's facsimile equipment and letterhead to transmit various allegations concerning his former spouse's character to her employer.

The court handling the divorce action issued an order stating that "[t]hroughout the course of the marriage [respondent was] verbally abusive to [his former spouse] to the extent that the verbal abuse was overheard by neighbors and seen by close friends of the parties." The order also states that respondent testified at the hearing "that [he] had only been at [an alleged paramour's] residence on other occasions to drop off and pick up files." The order then provides that "[respondent] had approved an Affidavit signed by [the alleged paramour] stating this fact . . . .", and that he submitted the affidavit to the court. Finally, the order finds that [respondent] engaged in illicit sexual behavior with [the alleged paramour] after the separation of the parties and that this relationship [was] shown by a preponderance of the evidence."

Respondent admits that in his response to Disciplinary Counsel's inquiries, he maintained the North Carolina court found there to be neither evidence of marital misconduct nor

physical abuse on his part. Respondent maintains that at the time he made his initial response to Disciplinary Counsel, he had not been served with an executed copy of the order in the divorce action. Respondent contends he was responding to the initial inquiry based on his memory and his understanding of the court's ruling. He also contends that he was responding to the original allegations filed by his former spouse with the Office of Disciplinary Counsel and that his understanding was that the complaint concerned evidence of marital misconduct prior to the date of the parties' separation.

## IV. *Client File Matter*

Respondent was retained to represent a client in a matter concerning a Social Security disability claim. Respondent entered into a fee agreement with the client. The fee agreement stated the client would be billed $150 per hour for respondent's services, $50 per hour for paralegal services, plus all costs, whether the case was settled or went to trial.

Approximately eleven months later, the client terminated respondent as legal counsel and requested a copy of her file. Respondent charged the client $.33 per page to copy the file and, after receipt of payment, returned the file to the client.

In his response to Disciplinary Counsel's inquiries, respondent maintained that he was required by law to retain a copy of the client's file, so a copy of the file was made and the client was billed at the rate of $.33 per page. Thereafter, respondent was asked to provide a copy of the fee agreement he had entered into with the client and to explain his "legal" argument or justification for charging a client for the copying of the client's file. Respondent failed to timely respond to the second request for information. In the untimely response he eventually filed, respondent failed to provide a complete explanation as originally requested. Instead, respondent provided a copy of the fee agreement, which respondent now admits was an insufficient legal basis for charging the client $.33 per page for the copying and return of the client's file.

### *Law*

Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule

407, SCACR: Rule 3.3(a)(4) (a lawyer shall not knowingly offer evidence that the lawyer knows to be false); Rule 8.1(a) (a lawyer in connection with a disciplinary matter, shall not knowingly make a false statement of material fact); Rule 8.1(b) (a lawyer in connection with a disciplinary matter shall not fail to disclose a fact necessary to correct a misapprehension known by the lawyer to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from a disciplinary authority); Rule 8.4(a) (it is professional misconduct for a lawyer to violate the Rules of Professional Conduct); and Rule 8.4(e) (it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice).

Respondent also admits that his misconduct constitutes grounds for discipline under the following provisions of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (violation of the Rules of Professional Conduct); Rule 7(a)(3) (knowing failure to respond to a demand or inquiry from a disciplinary authority); and Rule 7(a)(5) (engaging in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law).

### Conclusion

We hereby accept the Agreement for Discipline by Consent and suspend respondent from the practice of law in this state for two years. Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur. BURNETT, J., not participating.